# IN THE MATTER OF THE ESTATE OF JOSEF LANGER, Deceased.

FRANK LANGER, Joseph Langer, Jr., Mary Pfeifer, Formerly Mary Langer, Appellants, v. HUBERT LANGER, Julius Langer, Emil Langer, .Millie Melander, Formerly Millie Langer, Hattie Miller, Formerly Hattie Langer, Russell Melander, a Minor, Violet Melander, a Minor, and Beatrice Melander, a Minor, and Ernest Melander, Special Guardian of Said Minors, Russell Melander, Violet Melander, and Beatrice Melander; Emil Langer and Hubert Langer, Executors of the Last Will and Testament of Josef Langer, Deceased, Respondents.

(219 N. W. 562.)

**Wills — domicil — jurisdiction of county court; evidence held to support judgment to probate.**

The record is examined, and for reasons' stated in the opinion, it is held to support the findings of the trial court:

(a) That the domicil of the deceased at the time of his death was Barnes county and that the county court of Barnes county was the court having jurisdiction to probate his last will and testament.

(b) That the will was properly admitted to probate as the valid will of the deceased.

Opinion filed May 12, 1928.

Executors and Administrators, 23 C. J, § 34 p. 1010 n. 48.   Wills, 40 Cyc. p. 1023 n. 29.

Appeal from the District Court of Barnes county, *Englert,* J.   From an order denying their petition to vacate the probate of the will of the deceased and to declare said will to be void, the petitioners appealed to the district court, and now appeal from the action of the district court sustaining the order of the county court.

Affirmed.

*A. C. Lacy,* for appellants.

*A. P. Paulson,* for respondents.

NUESSLE, Ch. J. This appeal involves the propriety of the probate of the will of Josef Langer, deceased, in the county court of Barnes county.

Josef Langer died in Barnes county in November, 1925. He was then 79 years old. He was a farmer who had lived for many years in Cass county. He was of German birth and understood and spoke English poorly, and read it not at all. His wife, who survived him a few days, was old and in feeble health. They had reared a large family, all of whom had left the parental roof and established homes of their own. Josef Langer left a considerable estate. He had helped his children financially at one time or another so that several of them were charged with advancements by him. His son, Hubert Langer, was a prosperous farmer living in Barnes county. Hubert had a good home and no children. In 1925 Josef Langer sold the greater part of his personal belongings. His wife was very ill, so she was taken to the hospital at Valley City and Josef himself went to live with Hubert. He said he wanted to do this as Hubert had a good home and there were no children who might bother him. For a year theretofore there had been some talk by Josef and among the children about Josef selling his farm homestead. One or two of the neighbors had been approached to see whether or not they would buy. Josef had made a price and this had been considered by some of the neighbors. In October, 1925, Josef told Hubert he wanted to make his will. At Josef's request Hubert went to town and called on Josef's banker who understood German well, and another designated by Josef, and told them his father wanted them to come out and draw his will for him. They went out. Hubert was in his father's room at the time these men were there and heard what was said. The old gentleman explained in German to the banker what he wanted in his will. The banker wrote the will in English. Then he read it over to Josef, section by section, and explained it in German. Josef assented to the will as written, said that was what he wanted, and signed it. In this will he made provision for all of the children, but charged against each such advancements as he said he had made prior thereto. He charged Hubert, for instance, with $1,500, and the other children with the various amounts he said they owed him. Among those so charged were his sons Frank and Joseph. He made no provision whatsoever for

his wife who was then in the hospital at Valley City, but he did in-. struct the banker that the will was to be sealed in an envelope and not opened until after his wife's death. Shortly thereafter Josef Langer died. His wife, in the meantime, had been brought out to Hubert's home where she remained during her last illness and a few days after Josef's death she also died. Thereafter the will was opened and propounded for probate in Barnes county. It was admitted to probate and steps were taken to dispose of the estate in accordance with the terms of the will. Thereafter the appellants petitioned the county court to set the proceedings admitting the will to probate aside and declare the will to be void. The grounds urged in support of the petition were that the decedent was a resident of Cass county rather than of Barnes county at the time of his death and therefore the county court of Barnes county had no jurisdiction; that the decedent was incompetent and did not possess testamentary capacity at the time of making the will; that the decedent did not know the contents of the will at the time he signed the same for the reason it was written in English and he was unable to read or understand English; that the will was induced through fraud and undue influence. Hearing was had in the county court of Barnes county on this petition and the same was denied. Appellants thereupon appealed to the district court where the case was tried to the court without a jury. Evidence was offered on both sides. The district court affirmed the action of the county court. The instant appeal was then perfected to this court.

The questions for determination on this appeal are purely questions of fact. There is no disagreement between counsel as to the law. An examination of the record discloses that there is more or less dispute among the witnesses as to the facts.

Appellants first contend that the decedent was a resident of Cass county at the time of his death, though temporarily resident in Barnes county, and that, therefore, the county court of Cass county and not of Barnes county was clothed with jurisdiction to probate the 'will. Decedent was a very old man subject to the usual infirmities of old age. He had lately met with an accident which tended even more to incapacitate him. His wife was suffering with an incurable and fatal malady. It was necessary that she receive special medical attention so she had been removed to a hospital in Valley City. The decedent

was so feeble that he was unable to do any physical labor and was in no condition to maintain a household alone. So it was decided that the old people should give up their home and an auction of their household effects was had. All were sold excepting a stove, for which there were no bidders, an organ which was given to one of the daughters, and a few articles of personal property which decedent reserved and took with him when he went to live with Hubert. There is some discrepancy in the evidence as to statements made by him that his intention was to return to his homestead in the spring. It is undisputed, however, that he intended to live with Hubert during the winter. In any event, he went to Hubert's, taking with him such personal property as he had reserved, and began to live there. Considering all of the evidence we think he intended to abandon his homestead in Cass county and make his home thereafter with Hubert in Barnes county. It is true that in the will which is here in controversy Josef Langer made a special provision that $300 should be paid to that child with whom he might be living at the time of his death. From this the appellants urge that he had not determined where he was going to live. It seems to us, however, that it cannot be reasonably argued from this provision that he did not intend to leave Cass county or to make his home with Hubert. Since decedent thus actually took up his residence in Barnes county with the intention of making his home there, that county became the county of his domicil. McEwen v. McEwen, 50 N. D. 662, 197 N. W. 862. So the county court of Barnes county had jurisdiction in the matter. Comp. Laws 1913, § 8526.

Appellants next urge that Josef Langer was incompetent and did not possess testamentary capacity at the time he made the will. Decedent was 79 years of age at the time of his death in November, 1925, shortly after the will was executed. In the August preceding he had fallen off the porch of his home and injured himself quite severely. He had a somewhat faulty memory and was feeble. Still, considering all of the evidence, it appears to us that the appellants have not established lack of testamentary capacity of the defendant. He talked clearly to the banker and to the witness who accompanied the banker when they came to draw his will. He seemed to know exactly how his business affairs stood. His conversation with his children and with friends was normal. It is argued that the disposition of his property as made

by him in the will is evidence of lack of testamentary capacity. It is true that he charged against his son Frank an advancement of $1,500 which Frank denies having received. But it also appears that Frank had bought a farm from his father and things not having gone well with him he wanted to turn it back, so a compromise was made whereby he kept the land and his father indorsed a payment of $3,000, which was in fact not made, upon the contract. Thus it is reasonable to infer that the old gentleman considered that half of this amount was in the nature of an advancement. So it does not follow that he was confused as to his business affairs because he provided that the sum of $1,500, should be charged as an advancement against Frank. Likewise, his son Joseph, who was charged with an advancement of $2,000 in the will, denies that any advancement was ever made to him. It appears, however, that for several years the decedent had insisted that he had advanced Joseph this amount and there was a continuing dispute about the matter. Under these circumstances we think that the fact of making this charge in the will against Joseph cannot be considered as having any particular weight in showing that the decedent was incompetent to such an extent as not to be able to make a valid will. Again, he willed to his eldest daughter only $1,000, which was considerably less than the other children would receive under the terms of the will. It appears that this daughter was married when a young girl. She had not lived at home and helped accumulate the property which decedent had at the time of his death in the same measure as had the other children. She and her husband had prospered and were well-to-do farmers. So it seems that in view of these facts the circumstance that she was not treated as generously as the other children cannot be forcefully urged against the competence of the testator.

It is further urged against the will that the decedent did not understand the contents of the will at the time he executed it. He was a man of meager education. Though he had lived the greater part of his life in Cass county he spoke English but poorly and could not read or write it at all. Neither could he write in German. It appears, however, that he had a reasonable understanding of English. H. who was his banker and drew up the will for him at his request, spoke German and the conversation at the time he drew the will was in that language. The will was first dictated by decedent in German and then

translated into and written down in English by H. Then H. read it to decedent, section by section, and carefully explained the meaning of the provisions thereof. H. testified that the translation was exactly as it was given to him in German; that he explained it as translated to English to the decedent and, in his judgment, the decedent fully understood the contents of the instrument. Thereafter the decedent expressed his approval of the will and executed and acknowledged it as such. It is further urged that the fact that the will contained no reference to or provision for his wife indicates lack of understanding and competence on the part of the testator. But, as already stated, Mrs. Langer was mortally ill. At the time of the making of the will she was in the hospital and her husband knew that she could not recover from her illness. Under these circumstances he directed at the time he made the will that it should be enclosed in an envelope, the envelope sealed, and not opened until after his wife's death. So it is clear that he thought he would survive her and, in any event, even if he did not the will would not be disclosed and propounded until after her death. Thus the fact that there was no mention of his wife in the will is not entitled to great weight as establishing lack of understanding or incompetence on his part. We think that the appellants have not made such a showing in this respect as to warrant us in reversing the holdings of the county and district courts.

Lastly, it is urged that the will was induced through fraud and undue influence on the part of Hubert. The testimony of those present at the time it was executed is uncontradicted that Hubert took no part in its making; that while he was present and heard what took place he uttered no word as to what it should contain. In this connection it is to be noted that aside from the provision that $300 be paid to the child with whom decedent resided at the time of his death, Hubert shared in the property the same as the other children, excepting the eldest daughter who received only $1,000. He had had $1,500 from his father and was charged with this amount as an advancement just as the other children were charged. What has been said heretofore with reference to Frank and Joseph is applicable now in considering the advancements charged against them by the decedent. We do not think that the disposition of his property made by decedent in itself warrants a finding of fraud or undue influence, and there is nothing

else in the record which sustains the appellants' contentions in these respects.

Numerous errors are assigned on account of rulings of the trial court in receiving evidence. The case was tried to the court without a jury, and though the trial court may have been inclined to overrule objections to the introduction of evidence, he was impartial in his rulings and treated both sides alike in this respect. Though some of the evidence thus received may have been properly subject to the objections interposed, nevertheless, we must assume that the court in making his findings considered only that evidence which was properly in the record, and we think that such evidence was sufficient to sustain the findings. We therefore deem it proper to refrain from passing upon the several evidentiary questions raised in detail.

We have examined the record carefully and have endeavored to give proper consideration to the more or less conflicting testimony contained therein. We are of the opinion that the evidence justifies the determination made by the district court, and its action must be and it is affirmed.

CHRISTIANSON, BIRDZELL, BURKE, and BURR, JJ., concur.